IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| MERCUTIO TERRELL SOUTHALL, SR., *et al.*, )<br>)<br>Plaintiffs, )<br>)<br>v. )<br>)<br>BIRMINGHAM JEFFERSON CONVENTION CENTER AUTHORITY, *et al.*, )<br>)<br>Defendants. ) | 2:16-cv-01687-LSC |

MEMORANDUM OF OPINION

**I. Introduction**

Before the Court are Motions to Dismiss, filed by the three defendants, Birmingham Jefferson Civic Center Authority ("BJCCA") (doc. 27), Donald J. Trump for President Inc. ("the Trump Campaign") (doc. 39), and City of Birmingham ("the City") (doc. 43). The issues raised in Defendants' Motions have been fully briefed by all parties and are now ripe for decision. For the reasons stated below, all Motions to Dismiss are due to be GRANTED.

**II. Background**

   **A. Procedural History**

Plaintiffs Mercutio Terrell Southall, Sr. ("Southall"), and Carlos Montez Chaverst, Jr. ("Chaverst") brought this action alleging deprivation of constitutional rights under 42 U.S.C. § 1983; state law premises liability and breach of contract offenses; and violations of Alabama Code § 11-47-190. Plaintiffs filed this action against Defendants on October 17, 2016 (doc. 1). Plaintiffs filed their First Amended Complaint on November 22, 2016 (doc. 9). They then submitted a Second Amended Complaint on December 22, 2016 (doc. 23). On January 11, 2017, Defendant BJCCA filed its Motion to Dismiss (doc. 27). The Trump Campaign filed a Motion to Dismiss on March 6, 2017 (doc. 39). The City of Birmingham filed its Motion to Dismiss (doc. 43) on March 17, 2017.

**B. Facts[1]**

In November 2015, Southall and Chaverst obtained free tickets from an online vendor to attend the Donald J. Trump for President Campaign rally held at the Birmingham Jefferson Convention Center ("BJCC"). Prior to attending the rally, on November 18, 2015, Chaverst also obtained a municipal permit for

---

[1] At the motion to dismiss stage, the Court must accept the plaintiff's version of the facts as true, and construe "the reasonable inferences therefrom . . . in the light most favorable to the plaintiff." *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1273 n.1 (11th Cir. 1999) (citing *Hawthorne v. Mac Adjustment, Inc.*, 140 F.3d 1367, 1370 (11th Cir. 1998)). The following facts are, therefore, taken from Southall and Chaverst's allegations contained in their Second Amended Complaint (doc. 23), and the Court makes no ruling on their veracity.

"Public Demonstration of Public Right of Way" for the purpose of protesting the rally.

On November 21, 2015, Southall and Chaverst attended the Campaign Rally at the BJCC. Before the event began, Southall entered the building security area, just outside main BJCC auditorium, with a third party. As Southall and the third party proceeded to enter the BJCC auditorium, they noticed several Birmingham Police Officers who appeared to recognize them. Around the time President Trump walked onto the stage, Chaverst entered the BJCC, which by that time was filled with nearly 2,000 attendees, and met up with Southall and the third party. Chaverst then raised his cellular phone to record a video of the event. While his phone was raised, as part of the protest effort, Chaverst stated, "we're at the Donald Trump rally, here in Birmingham, Alabama, and we want to inform Donald Trump he's not welcome here. We need to dump the Trump." (Doc. 23 at 15 ¶44.) At that time, an unidentified man slapped the cellular phone out of Chaverst's hand. There was a verbal exchange; then Southall intervened and ended the scuffle.

Southall then guided Chaverst and the third party through the crowd. The crowd began to become aggressive and yelled racial slurs and other obscenities. Chaverst and Southall were separated by the pushing and kicking of the crowd. An attendee of the rally blocked their paths. Pushing ensued and Southall was

knocked to the ground. He was kicked, choked, punched, and scratched while racial slurs were being yelled at him by unidentified members of the crowd. Police arrived, attempted to stop the incident and guided Chaverst and Southall from the rally. During the police escort from the rally, now President Trump shouted, "Get him the hell out of here," as well as other unspecified statements. (Doc. 23 at 19 ¶ 60.)

**III. Standard**

All three Defendants, BJCCA, the City, and the Trump Campaign, move to dismiss under Federal Rule Civil Procedure 12(b)(6) for failure to state a claim. To survive a 12(b)(6) motion to dismiss, a plaintiff must generally satisfy the pleading requirements in Fed. R. Civ. P. 8. Rule 8 requires a pleading to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678–679 (2009). Instead, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Id*. at 678 (internal quotations omitted). *Iqbal* establishes a two-step process for evaluating a complaint. First, the Court must "begin by identifying pleadings that, because they

are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679. Second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* Factual allegations in a complaint need not be detailed, but they "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In reviewing the plaintiff's complaint, the Court must "draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

A party need not specifically plead each element in his or her cause of action, but the pleading must contain "enough information regarding the material elements of a cause of action to support recovery under some viable legal theory." *Am. Fed'n of Labor & Cong. of Indus. Orgs. v. City of Miami, Fla.*, 637 F.3d 1178, 1186 (11th Cir. 2011). Ultimately, the Court must be able to draw a reasonable inference from the facts that the other party is liable. *Reese v. Ellis, Painter, Ratterree & Adams, LLP*, 678 F.3d 1211, 1215 (11th Cir. 2012). Regardless, the Court must construe pleadings broadly and resolve inferences in the nonmoving party's favor. *Levine v. World Fin. Network Nat'l Bank*, 437 F.3d 1118, 1120 (11th Cir. 2006).

## IV. Discussion

### A. Count One : Negligence and Wantonness/Premises Liability against the BJCCA and Trump Campaign

In Alabama, "[i]t is well settled that absent a *special relationship* or *special circumstances*, a person has no duty to protect another from criminal acts of a third person"—such as the assaults at issue in this case. *Baptist Mem. Hosp. v. Gosa*, 686 So. 2d 1147, 1149 (Ala. 1996) (emphasis added); *see Moye v. A.G. Gaston Motels, Inc.*, 499 So. 2d 1368, 1370 (Ala. 1986); *see also Carroll v. Shoney's, Inc.*, 775 So. 2d 753, 756 (Ala. 2000). Accordingly, in order to state a cause of action on this claim, Southall and Chaverst must establish that the BJCCA and the Trump Campaign owed them a duty to protect by a showing of a special relationship or a special circumstance.

    i.    **Special Relationship**

Plaintiffs have not alleged the existence of a special relationship between the parties warranting imposition of premises liability. By not addressing the special relationship exception, they have waived any argument that it applies. *See Coal. for the Abolition of Marijuana Prohibition v. City of Atlanta*, 219 F.3d 1301, 1326 (11th Cir. 2000) ("[F]ailure to brief and argue [an] issue during the proceedings before [a] district court is grounds for finding that the issue has been abandoned."); *see Moore v. Prudential Residential Servs. Ltd. P'ship*, 849 So. 2d 914, 923 (Ala. 2002); *see also Smelser v. Trent*, 698 So. 2d 1094, 1095 n.1 (Ala. 1997).

Even if the special relationship exception were considered, Plaintiffs have not shown the "dependence or mutual dependence among the parties," required for

it to apply. *Young v. Huntsville Hosp.*, 595 So. 2d 1386, 1388-89 (Ala. 1992) (citation and internal quotation marks omitted); *see Finley v. Patterson*, 705 So.2d 826, 828 (Ala. 1997) (noting plaintiff must be "completely dependent upon the defendants for protection"); *see also Saccuzzo v. Krystal Co.*, 646 So. 2d 595, 597 (Ala. 1994) (plaintiff must be "uniquely" dependent on defendant for protection) (discussing *Young*, 595 So. 2d 1386)).

    ii.    **Special Circumstances**

For a finding of special circumstances imposing a duty to protect on a premises owner, Alabama law requires a plaintiff to prove three elements. "First, the particular criminal conduct must have been foreseeable. Second, the defendant must have possessed 'specialized knowledge' of the criminal activity. Third, the criminal conduct must have been a probability." *Carroll*, 775 So. 2d at 756 (citing *Moye*, 499 So. 2d at 1370; s*ee Tenn Tom Bldg. v. Olen, Nicholas, & Copeland, P.C.*, 908 So. 2d 230, 233 (Ala. 2005); *see also New Addition Club, Inc. v. Vaughn*, 903 So. 2d 68, 73 (Ala. 2004). However, Alabama courts have been unwilling to apply this exception absent extraordinary circumstances, and none exists here. *See Williams v. First Ala. Bank*, 545 So. 2d 26, 27 (Ala. 1989); *see also CIE Service Corp. v. Smith*, 460 So. 2d 1244, 1247 (Ala. 1984) ("[I]t is difficult to impose liability on one person for an intentional criminal act committed by a third person."); *see also Moye*, 499 So. 2d at 1372–73 ("When the number and

frequency of crimes on the premises rise, and notice is shown on the part of the owner, then, and only then, would criminal activity become reasonably foreseeable.").

First, Plaintiffs must show, "the *particular* criminal activity, not just any criminal activity, [was] foreseeable." *New Addition Club, Inc.*, 903 So. 2d at 75 (emphasis added). They have failed to do so. Plaintiffs allege the criminal conduct at issue was foreseeable based on 1) "threats of violence" in media reports; 2) incidents at other Trump rallies; 3) the general environment of the BJCC; 4) the history of Birmingham; 5) one Plaintiff received a permit to demonstrate at the rally; and 6) President Trump's offer to pay legal fees for a supporter arrested at his rally. (Doc. 23 at 7-8, 10, 19 ¶ 18, 20, 27, 61.) None of these allegations meets the exacting standard required for liability under the law.

Next, to satisfy the second prong of the *Carroll* test, Southall and Chaverst must show the BJCCA and the Trump Campaign possessed "specialized knowledge" of the eventuality of the alleged assaults. *See Carroll*, 775 So. 2d at 756. They have not done so. The facts alleged do not indicate this was a circumstance in which either Defendant "was given actual, express, and specific notice that a specific person might attempt to commit a criminal act against another specific person." *Gosa*, 686 So. 2d at 1151. Plaintiffs claim both the BJCCA and the Trump Campaign had actual knowledge that an incident to suppress opposing

political viewpoints was imminent. They cite to Birmingham's history of violence as evidence of this knowledge. (Doc. 23 at 4.) However, general conclusory statements of past violence in Birmingham are not enough to show the BJCCA or the Trump Campaign knew or should have foreseen that there would be attacks at this campaign rally. *See Carroll*, 775 So. 2d at 756. Plaintiffs also cite violence at other Trump rallies to show the BJCCA and the Trump Campaign were on notice of imminent violence at this rally in particular. However, the websites Plaintiffs cite as evidence of past violence at Trump rallies show only one incident of violence before the rally in Birmingham, the others reference incidents at rallies subsequent to the one at issue in this case. Based on the facts pled, prior incidents did not put the BJCCA or the Trump Campaign on notice that the assault by these particular perpetrators was foreseeable.

In their Response to the BJCCA's Motion to Dismiss, Plaintiffs allege for the first time that campaign staff or BJCCA staff intercepted them at the entrance to the rally saying the Plaintiffs were "[not] wanted [t]here," stating, "We've been expecting you." (Doc. 49 at 13 ¶ 16.) However, in general, Plaintiffs cannot amend their complaint by making additional factual allegations in a brief filed in response to a motion to dismiss. *See Schneider v. Cal. Dep't of Corr.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998); *Harrell v. U.S.*, 15 F.3d 232, 236 (7th Cir. 1993); *accord Com. of Pa. ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir.

1988) ("[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss.") (internal quotations omitted)); *cf. Gilmour v. Gates*, *McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004) (noting that a party cannot amend her complaint through argument in a brief opposing summary judgment). However, even if permitted, these allegations do not rise to the level required to avoid a Motion to Dismiss. While Plaintiffs do allege in their Second Amended Complaint that as they entered the building they "noticed several . . . Police Officers who appeared to recognize Southall and/or [the third party]," these allegations are not enough to prove Defendants were on notice that Southall might be involved in a potential incident at the rally. (Doc. 23 at 14.) The circumstances surrounding the event were of no special import as to put either the BJCCA or the Trump Campaign on notice of any imminent unlawful activity.

The circumstances here are far less egregious than those present in *Carroll* and *New Addition Club*, neither of which held the premises owner liable. In *New Addition Club*, a club patron was shot and killed by another patron outside the club. 903 So. 2d at 69. The owner of the club knew the shooter had a propensity for violence and was "hot-tempered" based on prior incidents—one in which he had driven up to the door of the club wielding his shotgun, and another in which he punched his girlfriend in the face in the club parking lot. *Id.* at 75. There had also been one prior shooting at the club involving a different patron. *Id.* Even in light

of the premises owner's actual knowledge of the violent nature of this particular patron, the Alabama Supreme Court still held that the club owner could not be held liable because the murder was not foreseeable, nor was the killing of this particular decedent a probability. *Id.*

In *Carroll*, the defendant restaurant owner was not liable even though the attacker threatened the decedent on the defendant's premises the night before she was murdered at the restaurant. *Carroll*, 775 So. 2d at 754. Mrs. Harris arrived for her restaurant shift one evening and voiced her fears about her husband beating, choking and threatening her again as he had the night before at their home. *Id.* at 754. During that shift, Mr. Harris entered the restaurant and threatened her further. *Id.* That night coworkers assisted Mrs. Harris in obtaining a motel room because she was so afraid of her husband. *Id.* The next day, the events that had transpired were communicated to the manager on duty and Mrs. Harris called in to ask if she could be excused from her shift for fear that her husband would again attack her at the restaurant. *Id.* at 755. However, the restaurant manager refused. *Id.* That day during her shift, Mr. Harris entered the restaurant and killed Mrs. Harris. *Id.* Despite the restaurant owner's actual knowledge of the prior violence between the spouses, on the restaurant premises and elsewhere, the Alabama Supreme Court ruled that no employee of the restaurant "was told, or should have reasonably foreseen" that Mr. Harris would kill his wife there. *Id.* at 757.

Plaintiffs do not establish that the criminal conduct was foreseeable, nor do they show that the Defendants, BJCCA and the Trump Campaign, possessed special knowledge that these particular unidentified individuals would commit violence against these particular Plaintiffs. Neither do they show that either Defendant was aware those actions were probable as required to create special circumstances under Alabama law. Further, Plaintiffs have shown no special connection between themselves and the private citizen rally attendees who allegedly assaulted them. The BJCCA and the Trump Campaign owed no duty to protect Plaintiffs from the actions of any unknown assailants. *See Carroll*, 775 So. 2d at 756; *see also New Addition Club, Inc.*, 903 So. 2d at 75. Accordingly, the BJCCA's and the Trump Campaign's Motions to Dismiss are due to be granted on this claim.

### B. Count Two: Breach of Contract by BJCCA & Trump

The Court declines address the state law breach of contract allegations in Count One because, as explained below, after dismissal of the federal claims, we elect not to exercise supplemental jurisdiction over the remaining state law claims. 28 U.S.C. § 1367(c)(3); *see Raney v. Allstate Ins. Co.*, 370 F.3d 1086, 1089 (11th Cir. 2004).

### C. Count Three: Violation of Constitutional Rights against the City of Birmingham, BJCCA, and Trump Campaign

An action may be brought under § 1983 if a person, acting under authority of a statute, ordinance, regulation, custom, or usage of any State deprives a citizen of any rights, privileges, or immunities secured by the Constitution. 42 U.S.C. § 1983 *et seq*. However, "nothing in the language of the Due Process Clause itself requires the State to protect the life, liberty, and property of its citizens against invasion by private actors. The clause is phrased as a limitation on the State's power to act, *not as a guarantee of certain minimal levels of safety and security*." *DeShaney v. Winnebago Cty. Dept. of Social Servs.*, 489 U.S. 189, 195 (1989) (emphasis added). Only custodial relationships such as incarceration or other forms of involuntary confinement automatically give rise to a governmental duty to protect citizens from harm by third parties. *White v. Lemacks*, 183 F.3d 1253, 1257 (11th Cir. 1999). The only other time a government entity may otherwise be liable is where an official's conduct is considered "arbitrary or conscious shocking." *Id.* (quoting *Collins v. City of Harker Heights*, 503 U.S. 115, 128 (1992)).

In *White*, nurses brought a § 1983 action against two sheriffs and the county. 183 F.3d at 1259. Because the plaintiffs' jobs necessitated close proximity to inmates who had propensity for violence, the defendants affirmatively promised to provide them protection and security. *Id.* at 1254. The defendants breached their promise. *Id.* During one of their nursing shifts at the jail infirmary, the plaintiffs

were assaulted and severely beaten by an inmate. *Id.* Even so, the Eleventh Circuit affirmed the trial court's grant of the defendants' motion to dismiss for failure to state a claim, finding no substantive due process violations. *Id.* at 1259.

In *DeShaney*, the Supreme Court ruled the State had no constitutional duty to protect a son against his father's violence even after receiving multiple reports of child abuse which culminated in the child lapsing into a coma and suffering permanent brain damage. 489 U.S. 189 at 195. The State's failure to intervene did not impose liability on the state caseworkers nor on the State, even though social workers noticed bruising and lacerations on the four-year-old while he was in state custody. *Id.* at 192-93.

Plaintiffs allege the City is liable for its failure to provide enough security at the rally and for failing to make arrests after the incident occurred; the BJCCA is liable for failing to prevent violence of this type from occurring on its premises; and the Trump Campaign is liable for failing to take precautions against an incident like this occurring. However, "[t]he Due Process Clause is not a guarantee against incorrect or ill-advised personnel decisions." *White*, 183 F.3d at 1257 (quoting *Collins*, 503 U.S. at 129)). Plaintiffs' assertions of wrong-doing by Defendants are precisely that: personnel decisions. The Eleventh Circuit has been consistent in its "reluctance to second-guess policy decisions about resources to be allocated to safety, which are best left to 'locally elected representatives, rather

than . . . federal judges interpreting the basic charter of Government for the entire country.'" *Nix v. Franklin County Sch. Dist.*, 311 F.3d 1373, 1377 (11th Cir. 2002) (quoting *Collins*, 503 U.S. at 128–29; citing *White,* 183 F.3d at 1258)).

Plaintiffs have not provided sufficient factual allegations as to how the section 1983 claim claims apply to Defendants or how Defendants violated the rights guaranteed them by the Constitution. They have only averred, in a conclusory fashion, that Defendants acted with "deliberate indifference" toward them. (Doc. 23 at 25-26.) The Eleventh Circuit "has been explicit in stating that 'deliberate indifference' is insufficient to constitute a due-process violation in a non-custodial setting." *Nix*, 311 F.3d at 1377. For these reasons, Plaintiffs have not pled sufficient facts to show that they have section 1983 claims against the Defendants.

Even assuming the claims were proper, Plaintiffs have not pled sufficient facts to show Defendants' acts shock the conscience. *See Maddox v. Stephens*, 727 F.3d 1109, 1119 (11th Cir. 2013) ("[P]laintiffs face a high bar when attempting to establish a substantive due process violation.") (quoting *Waddell v. Hendry Cnty. Sherriff's Office*, 329 F.3d 1300, 1305)). Courts seldom find government action by government officials conscience-shocking; and "[o]nly the most egregious official conduct can be said to be 'arbitrary in the constitutional sense.'" *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998) (quoting *Collins v. City of Harker*

*Heights*, *Tex.*, 503 U.S. 115, 129 (1992)). "To rise to the conscience-shocking level, conduct most likely must be 'intended to injure in some way unjustifiable by any government interest.'" *Davis v. Carter*, 555 F.3d 979, 982 (11th Cir. 2009) (quoting *Lewis*, 523 U.S. at 849). No facts have been pled showing Defendants intended to injure Plaintiffs. Additionally, we have found no precedent to support the assertion that a City, a venue or a political campaign's failure to protect from the intentional acts of a third party can be characterized as arbitrary or conscience shocking in a constitutional sense.

Furthermore, because Plaintiffs were not incarcerated or otherwise involuntarily confined, no special connection existed as to automatically give rise to a governmental duty. *See White*, 183 F. 3d at 1257. Plaintiffs were simply harmed by the utilization of allegedly insufficient security while attending the rally. *See id.* at 1258 ("[W]hen someone not in custody is harmed because too few resources were devoted to their safety and protection, that harm will seldom, if ever, be cognizable under the Due Process Clause."). As such, Plaintiffs' constitutional deprivation claims are not cognizable as Due Process violations and, thus, fail as a matter of law. Southall and Chaverst's claims under §1983 are due to be dismissed and Defendants' Motions to Dismiss are due to be granted as to this claim.

**D. Count Four: Violation of Ala. Code § 11-47-190 by the City**

Like Count Two, the Court declines to address allegations contained in this Count because after dismissal of the federal claims we elect not to exercise supplemental jurisdiction over the remaining state law claims. *See Raney*, 370 F.3d at 1089.

### E. State-Law Claims

After dismissal of the § 1983 claims, no federal claims remain. Plaintiffs, Southall and Chaverst, and Defendants, BJCCA and the City, are all alleged to be citizens of Alabama. Therefore, complete diversity does not exist. *See* 28 U.S.C. § 1332. Even if a claim has been stated under state law in Count One, it is summarily dismissed in the alternative. The Court declines to exercise supplemental jurisdiction over the state law claims contained in Counts One, Two and Four, and the claims are due to be dismissed without prejudice. 28 U.S.C. § 1367(c)(3); *see Raney*, 370 F.3d at 1089 ("We have encouraged district courts to dismiss any remaining state claims when, as here, the federal claims have been dismissed prior to trial.").

### V. Conclusion

For the reasons stated, the BJCCA's Motion to dismiss (doc. 27) is due to be **GRANTED**. The Trump Campaign's Motion to Dismiss (doc. 39) is due to be **GRANTED**. The City's Motion to Dismiss (doc. 43) is due to be **GRANTED**. An order will be entered along with this opinion.

**DONE** and **ORDERED** on September 19, 2017.

_____
L. Scott Coogler
United States District Judge

190685